UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RASHID ELLIS, | |
| Plaintiff, | |
| v. | Civil Action No. 24-0977 (EGS) |
| ALEJANDRO N. MAYORKAS,<br>Secretary of Homeland Security, | |
| Defendant. | |

**DEFENDANT'S MOTION TO DISMISS AND**
**MEMORANDUM IN SUPPORT THEREOF**

# TABLE OF CONTENTS

Table of Contents ............................................................................................................. i

Table of Authorities ......................................................................................................... ii

Background ........................................................................................................................ 1

    I.      Alleged Offensive Comments and Conduct Between 2011 and 2019 ................... 1

    II.     Disqualification from Two Hard-to-Staff Openings on August 6, 2021 ............... 2

    III.    Informal Grievance Filed on August 9, 2021 ....................................................... 3

    IV.    Placement on Paid Administrative Leave on September 3, 2021 .......................... 4

    V.     September 3, 2021, Memorandum for the Record Regarding Protectee Complaint
          .................................................................................................................................. 5

    VI.    Non-Promotion in 2022 and Various Other Administrative Complaints ............... 5

Legal Standard .................................................................................................................. 7

Argument ........................................................................................................................... 9

    I.      Plaintiff Failed to Exhaust Administrative Remedies as to Any Claims Related to
          Alleged Events Prior to September 20, 2021, or Alleged Failures to Investigate
          His Complaints ...................................................................................................... 9

    II.     Plaintiff Fails to Allege Any Discrete Discrimination or Retaliation Claim. ....... 12

          A.     Plaintiff Cannot Raise a Discrimination or Retaliation Claim Based on the
                Agency's Handling of his Administrative Complaints. ............................ 13

          B.     Many of the Alleged Actions Are Not Adverse ....................................... 14

          C.     Plaintiff Also Fails to Allege Sufficient Facts to Support His Remaining
                Retaliation Claims ................................................................................... 23

          D.     Plaintiff Fails to Raise Any Inference of Discrimination for Any of the
                Alleged Personnel Actions ....................................................................... 31

    III.    Plaintiff's Hostile Work Environment Claim Fails as a Matter of Law. .............. 33

Conclusion ...................................................................................................................... 38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajisefinni v. KGPG LLP,*
   17 F. Supp. 3d 28 (D.D.C. 2014) ........................................................................ 32

*Aldrich v. Burwell,*
   197 F. Supp. 3d 124 (D.D.C. 2016) ..................................................................... 21

*Alexander v. Tomlinson,*
   507 F. Supp. 2d 2 (D.D.C. 2007) ........................................................................ 13

*Alston v. Johnson,*
   208 F. Supp. 3d 293 (D.D.C. 2016) ...................................................................... 8

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ....................................................................................... 7, 8

*Babb v. Wilkie,*
   589 U.S. 399 (2020) ........................................................................ 15, 16, 17, 18

*Bain v. Off. of Att'y Gen.,*
   Civ. A. No. 21-1751 (RDM), 2022 WL 17904236 (D.D.C. Dec. 23, 2022) ............ 17

*Baird v. Gotbaum,*
   662 F.3d 1246 (D.C. Cir. 2011) .......................................................... 18, 34, 36

\* *Baloch v. Kempthorne,*
   550 F.3d 1191 (D.C. Cir. 2008) ................................................................. 18, 23

*Baloch v. Norton,*
   517 F. Supp. 2d 345 (D.D.C. 2007) ..................................................................... 18

*Barbour v. Browner,*
   181 F.3d 1342 (D.C. Cir. 1999) ......................................................................... 22

*Beeck v. Fed. Exp. Corp.,*
   81 F. Supp. 2d 48 (D.D.C. 2000) ........................................................................ 32

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................................ 7, 8

*Bell v. Raimondo,*
   Civ. A. No. 19-3109 (CJN), 2023 WL 2662914 (D.D.C. Mar. 28, 2023) .......... 26, 27

*Bonnette v. Shinseki,*
   907 F. Supp. 2d 54 (D.D.C. 2012) ........................................................... 37

*Bowyer v. District of Columbia,*
   793 F.3d 49 (D.C. Cir. 2015)................................................................... 26

*Bowyer v. District of Columbia,*
   910 F. Supp. 2d 173 (D.D.C. 2012) ................................................... 26, 27

*Bozgoz v. James,*
   Civ. A. No. 19-0239 (ABJ), 2020 WL 4732085 (D.D.C. Aug. 14, 2020)............................. 11

*Brantley v. Kempthorne,*
   Civ. A. No. 06-1137 (ESH), 2008 WL 2073913 (D.D.C. May 13, 2008)........................ 30, 33

\* *Broderick v. Donaldson,*
   437 F.3d 1226 (D.C. Cir. 2006) ......................................................... 26, 27

*Brooks v. Grundmann,*
   748 F.3d 1273 (D.C. Cir. 2014) ..................................................... 34, 35, 37

*Brown v. Marsh,*
   777 F.2d 8 (D.C. Cir. 1985).................................................................... 10

*Burkes v. Holder,*
   953 F. Supp. 2d 167 (D.D.C. 2013) ........................................................... 34

\* *Burlington N. & Santa Fe Ry. v. White,*
   548 U.S. 53 (2006)............................................................................. 18

*Burnside v. Dep't of Just.,*
   Civ. A. No. 20-2309 (TSC), 2022 WL 715181 (D.D.C. Mar. 10, 2022).................................. 9

*Caison v. DeJoy,*
   Civ. A. No. 23-2414 (LLA), 2024 WL 1576780 (D.D.C. Apr. 11, 2024)............................... 13

*Cavalier v. Catholic Univ. of Am.,*
   306 F. Supp. 3d 9 (D.D.C. 2018) ............................................................. 30

*Chambers v. District of Columbia,*
   35 F.4th 870 (D.C. Cir. 2022)............................................................. 15, 23

*Chandler v. Gruenberg,*
   266 F. Supp. 3d 355 (D.D.C. 2017)........................................................... 25

*Chappell-Johnson v. Powell,*
   440 F.3d 484 (D.C. Cir. 2006)............................................................... 13

*Cheatham v. Holder*,
  935 F. Supp. 2d 225 (D.D.C. 2013) ...................................................................... 11

*Clemmons v. Acad. for Educ. Dev.*,
  107 F. Supp. 3d 100 (D.D.C. 2015) ...................................................................... 27

*Czekalski v. Peters*,
  475 F.3d 360 (D.C. Cir. 2007) .............................................................................. 17

*Davila v. Mayorkas*,
  Civ. A. No. 22-0357 (CRC), 2023 WL 2072455 (D.D.C. Feb. 17, 2023) ............... 21

*Diggs v. Potter*,
  700 F. Supp. 2d 20 (D.D.C. 2010) ........................................................................ 14

*Drasek v. Burwell*,
  121 F. Supp. 3d 143 (D.D.C. 2015) ...................................................................... 13

* *Easaw v. Newport*,
  253 F. Supp. 3d 22 (D.D.C. 2017) ................................................................... 31, 32

*Faragher v. City of Boca Raton*,
  524 U.S. 775 (1998) ..................................................................................... 22, 33, 34

*Foxworth v. McDonough*,
  Civ. A. No. 23-2195 (TNM), 2024 WL 111761 (D.D.C. Jan. 10, 2024) ................. 10

*Garza v. Blinken*,
  Civ. A. No. 21-2770 (APM), 2023 WL 2239352 (D.D.C. Feb. 27, 2023) ............... 17

*Golden v. Mgmt. & Training Corp.*,
  266 F. Supp. 3d 277 (D.D.C. 2017) ...................................................................... 27

*Gomez-Perez v. Potter*,
  553 U.S. 474 (2008) .............................................................................................. 16

*Green v. Small*,
  Civ. A. No. 05-1055, 2006 WL 148740 (D.D.C. Jan. 19, 2006) ...................... 11, 12

*Greer v. Bd. of Trs. of Univ. of D.C.*,
  113 F. Supp. 3d 297 (D.D.C. 2015) ...................................................................... 24

*Hamilton v. Geithner*,
  666 F.3d 1344 (D.C. Cir. 2012) ............................................................................ 25

*Hampton v. Vilsack*,
  760 F. Supp. 2d 38 (D.D.C. 2011) ........................................................................ 35

*Hargrove v. AARP*,
  205 F. Supp. 3d 96 (D.D.C. 2016) ................................................................ 10

*Harris v. Forklift Sys.*,
  510 U.S. 17 (1993) ........................................................................................ 33

*Harris v. Mayorkas*,
  Civ. A. No. 21-1083 (GMH), 2022 WL 3452316 (D.D.C. Aug. 18, 2022) ............ 32

*Harris v. Trs. of Univ. of D.C.*,
  567 F. Supp. 3d 131 (D.D.C. 2021) ................................................................ 28

*Hartzler v. Mayorkas*,
  Civ. A. No. 20-3802 (GMH), 2022 WL 15419995 (D.D.C. Oct. 27, 2022) ............ 11

*Heavans v. Dodaro*,
  Civ. A. No. 22-0836 (BAH), 2022 WL 17904237 (D.D.C. Dec. 23, 2022) ............ 36

*Hicks v. Gotbaum*,
  828 F. Supp. 2d 152 (D.D.C. 2011) ................................................................ 36

*Hill v. Kempthorne*,
  577 F. Supp. 2d 58 (D.D.C. 2008) .................................................................. 9

*Hockaday v. Wash. Metro. Area Transit Auth.*,
  No. 23-7085, 2024 WL 2229699 (D.C. Cir. May 17, 2024) .............................. 19

*Hockaday v. Wash. Metro. Area Transit Auth.*,
  Civ. A. No. 21-3265 (TNM), 2023 WL 3844388 (D.D.C. June 6, 2023) ............ 19

*Holcomb v. Powell*,
  433 F.3d 889 (D.C. Cir. 2006) ................................................................ 22, 23

*Holmes v. Wash. Metro. Area Transit Auth.*,
  Civ. A. No. 22-1478 (JEB), 2024 WL 864217 (D.D.C. Feb. 29, 2024) ................ 21

*Hornsby v. Watt*,
  217 F. Supp. 3d 58 (D.D.C. 2016) .................................................................. 19

*Hornsby v. Watt*,
  No. 17-5001, 2017 WL 11687516 (D.C. Cir. Nov. 14, 2017) .......................... 19

*Horsey v. Dep't of State*,
  170 F. Supp. 3d 256 (D.D.C. 2016) ................................................................ 30

*Howard v. Evans*,
  193 F. Supp. 2d 221 (D.D.C. 2002) ................................................................ 9

*Hunter v. District of Columbia*,
   No. 13-7003, 2013 WL 5610262 (D.C. Cir. Sept. 27, 2013)................................................ 20

*Hunter v. District of Columbia*,
   905 F. Supp. 2d 364 (D.D.C. 2012) ..................................................................................... 20

*Hurd v. District of Columbia*,
   864 F.3d 671 (D.C. Cir. 2017)............................................................................................... 8

*Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*,
   937 F. Supp. 2d 18 (D.D.C. 2013) ................................................................................... 8, 22

*Jones v. Bernanke*,
   557 F.3d 670 (2009)............................................................................................................. 25

*Jones v. Castro*,
   168 F. Supp. 3d 169 (D.D.C. 2016) ..................................................................................... 19

*King v. Holder*,
   77 F. Supp. 3d 146 (D.D.C. 2015) ....................................................................................... 21

*Koch v. White*,
   967 F. Supp. 2d 326 (D.D.C. 2013) ..................................................................................... 14

*Lester v. Natsios*,
   290 F. Supp. 2d 11 (D.D.C. 2003) ....................................................................................... 36

*Lewis v. District of Columbia*,
   653 F. Supp. 2d 64 (D.D.C. 2009) ....................................................................................... 29

*Lilly v. District of Columbia*,
   657 F. Supp. 3d 65 (D.D.C. 2023) ....................................................................................... 21

*Mahmoud v. Libr. Of Cong.*,
   Civ. A. No. 20-1935 (JEB), 2021 WL 6808293 (D.D.C. Feb. 9, 2021) ................................. 10

*Martinez v. Constellis/Triple Canopy*,
   Civ. A. No. 20-0153 (RC), 2020 WL 5253851 (D.D.C. Sept. 3, 2020) ................................. 37

*Mason v. Geithner*,
   811 F. Supp. 2d 128 (D.D.C. 2011) ..................................................................................... 34

*McCallum v. Mayorkas*,
   Civ. A. No. 21-1911 (ABJ), 2023 WL 3203011, at (D.D.C. May 2, 2023) ............................ 23

*McKeithan v. Boarman*,
   803 F. Supp. 2d 63 (D.D.C. 2011) ....................................................................................... 11

*Menoken v. McGettigan*,
    273 F. Supp. 3d 188 (D.D.C. 2017) ........................................................... 30

*Mohasco Corp. v. Silver*,
    447 U.S. 807 (1980) ................................................................................... 9

*Mount v. Johnson*,
    36 F. Supp. 3d 74 (D.D.C. 2014) ............................................................. 10

*Muldrow v. City of St. Louis*,
    144 S. Ct. 967 (Apr. 17, 2024) ........................................................... 15, 16

*Mulkerin v. Bunch*,
    Civ. A. No. 19-3850, 2021 WL 3771806 (D.D.C. 2021) ......................... 27

* *National Railroad Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002) .............................................................................. 9, 10

*Nguyen v. Mabus*,
    895 F. Supp. 2d 158 (D.D.C. 2012) ........................................................... 9

* *Nurriddin v. Bolden*,
    674 F. Supp. 2d 64 (D.D.C. 2009) ..................................................... 35, 36

*Nurriddin v. Bolden*,
    818 F. 3d 751 (D.C. Cir. 2016) ................................................................ 29

*Paulk v. Architect of the Capitol*,
    79 F. Supp. 3d 82 (D.D.C. 2015) ............................................................ 24

*Rattigan v. Gonzales*,
    503 F. Supp. 2d 56 (D.D.C. 2007) ........................................................... 30

*Reid v. Buttigieg*,
    Civ. A. No. 20-1262 (TJK), 2023 WL 2184549 (D.D.C. Feb. 23, 2023)................................. 20

*Robinson-Douglas v. Coastal Int'l Sec., Inc.*,
    287 F. Supp. 3d 14 (D.D.C. 2018) ........................................................... 25

*Sellers v. Dep't of Def.*
    No. 07-0418, 2009 WL 559795 (D.R.I. Mar. 4, 2009) ............................ 11

*Short v. D.C. Dep't of Corr.*,
    Civ. A. No. 23-0261 (RC), 2024 WL 1213769 (D.D.C. Mar. 20, 2024)................................. 24

*Smith v. Casellas*,
    119 F.3d 33 (D.C. Cir. 1997) ................................................................... 14

*Smith v. Jackson*,
539 F. Supp. 2d 116 (D.D.C. 2008) ....................................................... 33

*Soliman v. George Wash. Univ.*,
658 F. Supp. 2d 98 (D.D.C. 2009) ......................................................... 28

*Spinelli v. Gross,*
446 F.3d 159 (D.C. Cir. 2006) ................................................................ 9

*Stella v. Mineta*,
284 F.3d 135 (D.C. Cir. 2002) .............................................................. 30

*Stewart v. Evans*,
275 F.3d 1126 (D.C. Cir. 2002) ............................................................ 33

*Talavera v. Shah*,
638 F.3d 303 (D.C. Cir. 2011) .............................................................. 25

*Terveer v. Billington*,
34 F. Supp. 3d 100 (D.D.C. 2014) ......................................................... 10

*Townsend v. United States*,
236 F. Supp. 3d 280 (D.D.C. 2017) ................................................. 29, 35

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
133 S. Ct. 2517 (2013) ......................................................................... 24

*Vanover v. Hantman*,
38 F. App'x 4 (D.C. Cir. 2002) ............................................................... 8

*Vanover v. Hantman*,
77 F. Supp. 2d 91 (D. D.C. 1999) .......................................................... 8

*Vasser v. McDonald*,
228 F. Supp. 3d 1 (D.D.C. 2016) ............................................................ 9

*Walker v. Johnson*,
798 F.3d 1085 (D.C. Cir. 2015) ............................................................ 13

*Wang v. Wash. Metro. Area Transit Auth.*,
206 F. Supp. 3d 46 (D.D.C. 2016) ................................................... 26, 27

*Ward v. D.C. Dep't of Youth Rehab. Servs.*,
768 F. Supp. 2d 117 (D.D.C. 2011) ......................................................... 8

*Wardrick v. Fed. Bureau of Prisons*,
Civ. A. No. 19-0184, 2020 WL 1821133 (D.D.C. Apr. 10, 2020) ............................................. 8

*Ware v. Billington,*
    344 F. Supp. 2d 63 (D.D.C. 2004) ................................................................ 21

*Wells v. Hense,*
    235 F. Supp. 3d 1 (D.D.C. 2017) .................................................................. 30

*Wesley v. Georgetown Univ.,*
    Civ. A. No. 18-1539 (BAH), 2018 WL 5777396 (D.D.C. Nov. 2, 2018) ............... 19

*Williams v. Brennan,*
    320 F. Supp. 3d 122 (D.D.C. 2018) ............................................................... 9

*Williams v. Spencer,*
    883 F. Supp. 2d 165 (D.D.C. 2012) .............................................................. 24

*Wilson v. Clayton,*
    272 F. Supp. 3d 25 (D.D.C. 2017) ................................................................ 10

*Wilson v. Dep't of Trans.,*
    759 F. Supp. 2d 55 (D.D.C. 2011) ................................................................ 13

*Wright v. Garland,*
    Civ. A. No. 17-1081 (EGS/GMH), 2022 WL 17584011 (D.D.C. Dec. 12, 2022) ........ 21

*Young v. Sullivan,*
    733 F. Supp. 131 (D.D.C. 1990) ................................................................... 13

**Statutes**

29 U.S.C. § 633a ........................................................................................ 15

\* 42 U.S.C. § 2000e-16 .............................................................................. 14, 15, 16

42 U.S.C. § 2000e-2 .................................................................................. 15, 16

42 U.S.C. § 2000e-3 ................................................................................... 26

5 U.S.C. § 2302 ........................................................................................ 17

**Rules**

Fed. R. Civ. P. 12(b)(6) .............................................................................. 7, 8

Plaintiff Rashid Ellis, a Special Agent with the U.S. Secret Service (the "Secret Service" or the "Agency'), brings this case based on a variety of workplace complaints, such as his disqualification from two job openings, his placement on paid administrative leave, inquiries into a conduct complaint, a non-promotion, and the handling of his various administrative complaints, among other things. Plaintiff alleges that the Secret Service's handling of these workplace matters constituted retaliation, discrimination, and a hostile work environment under Title VII. Plaintiff's allegations, however, are subject to dismissal for several reasons.

First, Plaintiff has failed to exhaust administrative remedies for many of his claims. Second, many of the alleged actions are not actionable under theories of discrete discrimination or retaliation under Title VII, or Plaintiff fails to sufficiently allege any inference of such to meet his pleading burden. Finally, Plaintiff fails to allege a hostile work environment claim as a matter of law. Therefore, Alejandro Mayorkas, in his official capacity as Secretary of Homeland Security, respectfully moves to dismiss Plaintiff's Complaint (ECF No. 1) in full pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).

## BACKGROUND[1]

In May 2011, Plaintiff began working as a Special Agent for the Secret Service. Compl. ¶ 21, ECF No. 1. Plaintiff identifies as an African American Christian with dark skin. *Id.* ¶¶ 19, 31. He alleges that others perceive him to be Muslim based on his full name. *Id.* ¶ 20.

## I.  Alleged Offensive Comments and Conduct Between 2011 and 2019

Plaintiff alleges a series of separate incidents that occurred around 2011, 2015, 2017, and 2019 that he perceived to be offensive. Compl. ¶¶ 27-40. First, Plaintiff alleges that at some

---

[1]     Defendant assumes for purposes of this motion only that the allegations in Plaintiff's Complaint are true.

unspecified time, Mr. Michael Hackney, whom Plaintiff identifies as white with "a non-Muslim sounding name," *id.* ¶ 27, made comments about previously physically injuring people with dark skin and at various times in 2011 called Plaintiff and his car "Muslim." *Id.* ¶¶ 28-30.  Four years later at a basic training in November 2015, Mr. Hackney allegedly physically attacked Plaintiff, and Plaintiff's white classmates rated him poorly. *Id.* ¶¶ 32-35. When Plaintiff told Mr. Joseph Berrios, an Assistant to the Special Agent in Charge, he intended to report the incident, Mr. Berrios discouraged him. *Id.* ¶ 36. Nearly two years after that episode, in April 2017, Mr. Hackney and Assistant to the Special Agent in Charge Timothy O'Connor allegedly played a joke on Plaintiff by pulling a live weapon on him. *Id.* ¶ 37. More than two years after that alleged incident, in December 2019, Mr. Hackney allegedly "aggressively" drove his vehicle toward Plaintiff and his family. *Id.* When Plaintiff told Mr. Chris Thompson, a witness of the incident, he wanted to report this incident, Mr. Thompson apparently discouraged Plaintiff. *Id.* ¶ 38.

## II.   <u>Disqualification from Two Hard-to-Staff Openings on August 6, 2021</u>

In October 2020, the Secret Service transferred Plaintiff from the Counter Assault Team to the Presidential Protective Detail (the "Detail"). Compl. ¶ 24. Less than a year later, on July 9, 2021, Plaintiff sought to leave the Detail. *Id.* ¶ 41. Plaintiff bid on two hard-to-staff job openings— one with the Airspace Branch and the other with the James J. Rowley Training Center. *Id.*

Between July 2021 and August 2021, Plaintiff alleges there were several conversations among Special Agents (David Cho, David Yamin, and David Iosilevich) at the Detail, various Human Resources employees (Patricia O'Leary, Elizabeth Lewis, and Susan Yarwood), the Secret Service's Legal Division (Dane Karvois and Andrew Cannady), and other Secret Service officials (Milton Wilson, Michael Plati, Thomas Hamann, Darren Giacoletto, and Kurt Lewis) as to Plaintiff's eligibility for the two hard-to-staff job openings, given that Plaintiff had served fewer than four years at the Detail. *Id.* ¶¶ 42-74.

On August 6, 2021, Plaintiff alleges he learned that the Secret Service had disqualified Plaintiff from the two hard-to-staff positions because Plaintiff had not fully served his four-year commitment with the Detail. *Id.* ¶¶ 42-71. On the same day, the Secret Service re-opened the job announcement for the Airspace Branch. *Id.* ¶¶ 69, 71.

### III.   <u>Informal Grievance Filed on August 9, 2021</u>

On August 9, 2021, Plaintiff filed an informal grievance with the Secret Service's Employee Relations Division (the "Division") to appeal his disqualification from the two hard-to-staff positions. Compl. ¶ 75; Ex. 1, Aug. 9, 2021, Informal Grievance (Excerpt). In the informal grievance form, Plaintiff stated, "As I was unjustly declared ineligible for consideration, I humbly and respectfully request an immediate review of interpretations and applications of policies that have placed me outside of the normal Special Agent Career Progression path." Ex. 1 at 2, Aug. 9, 2021, Informal Grievance (Excerpt).[2] He later explained the basis for his grievance in an attachment to the form:

> I respectfully file this Grievance and humbly and respectfully request personal relief in the form of a transfer from OPO/PPD/CSU to OPO/SOD/ASB, on or as near as possible to 9/12/21, due to a misinterpretation of policy and extenuating circumstances that have placed me outside of the normal Special Agent Career Progression path. My Grievance is that as a result of misapplied policy, I was mistakenly disqualified from being considered for a reassignment opportunity I should have been eligible for. Had I not been incorrectly disqualified I would have been selected for the reassignment opportunity.

*Id.* at 4.

On August 31, 2021, Plaintiff had a phone conversation with Division Chief Danielle Watson about his informal complaint. Compl. ¶ 77. Plaintiff alleges that during this call, he

---

[2]   Citations are to the page numbers in the ECF headings.

"expressed frustration at the barriers that racial discrimination had placed in the path of his career."
*Id.* ¶ 79. He alleges that he "joked that his career 'drove [him] to drink.'" *Id.*

On September 3, 2021, Mr. Giacoletto, a Secret Service Official, denied Plaintiff's
informal grievance. *Id.* ¶ 101. On September 9, 2021, Plaintiff filed a formal grievance, which was
also denied on October 8, 2021, by Assistant Director Jeremy Sheridan. *Id.* ¶¶ 119, 135.

**IV.    Placement on Paid Administrative Leave on September 3, 2021**

On September 1, 2021, Ms. Watson wrote a memorandum for the record documenting her
August 31, 2021, conversation with Plaintiff. Compl. ¶ 84; Ex. 2, Sept. 1, 2021, Mem. for R. by
Danielle Davis Watson ("Sept. 1, 2021, Watson Mem."). In that memorandum, Ms. Watson wrote
that Plaintiff had stated to her that he was an alcoholic. *Id.* ¶ 84; Ex. 2 at 2, Sept. 1, 2021, Watson
Mem. She also wrote, "[Plaintiff] went on to explain that he had never been a drinker but this
situation with the non-selection for a reassignment had driven him to drink, be angry, and yell and
fight with his family." Ex. 2 at 2, Sept. 1, 2021, Watson Mem. She further noted, "He said he
drinks at night while playing video games but he doesn't drink within 10 hours of his shift." *Id.*

Ms. Watson's memorandum was circulated to Ms. Yarwood, whom Plaintiff alleges then
circulated the memorandum to various Secret Service officials (Kim Cheatle, Mr. Plati, Mr.
Wilson), as well as the Secret Service's Legal Division (Thomas Huse and Mr. Cannady). *Id.*
¶¶ 85-91. Plaintiff alleges that Mr. Cho and Mr. Michael Mullen also became aware of Mr.
Watson's memorandum. *Id.* ¶¶ 92-100.

Due to the Secret Service's concern with Plaintiff's alcohol use, on September 3, 2021, the
Secret Service placed Plaintiff on administrative leave with pay. *Id.* ¶¶ 95-103; Ex. 3 at 2, Sept. 2,
2021, Admin. Leave Mem. The Secret Service stated that Plaintiff "will remain on administrative
leave until such time as you are returned to duty or administrative action is proposed and effected
removing you from a pay status." Ex. 3 at 2, Sept. 2, 2021, Admin. Leave Mem. Plaintiff signed

the Administrative Leave Memorandum. *Id.* The Secret Service initially denied Plaintiff's September 8, 2021, request for reinstatement. Compl. ¶ 118. Nonetheless, twelve days after being placed on paid administrative leave, on September 15, 2021, the Secret Service reinstated Plaintiff to duty. *Id.* ¶¶ 125, 127.

## V.     September 3, 2021, Memorandum for the Record Regarding Protectee Complaint

On September 3, 2021, Plaintiff's direct supervisor, Assistant to the Special Agent in Charge David Iosilevich informed Plaintiff that a protectee named "Cowboy" had complained about Plaintiff's conduct during an August 28, 2021, drive. Compl. ¶¶ 107-08.

On August 28, 2021, Plaintiff was driving home Cowboy and her friends after a night of dancing. *Id.* ¶ 108. When Plaintiff declined a request from Cowboy's friend to stop at a location other than Cowboy's destination, Plaintiff explained that the Secret Service "is not an Uber service." *Id.* ¶¶ 109-10 (quotations omitted). Mr. Iosilevich explained to Plaintiff that Cowboy had complained to the Secret Service about Plaintiff's response, and as a result, Mr. Iosilevich asked Plaintiff to write a memorandum for the record explaining the situation. *Id.* ¶¶ 112-13. Mr. Iosilevich instructed Plaintiff to submit the memorandum along with his request to be reinstated. *Id.* ¶ 113-14. Plaintiff wrote the memorandum for the record on September 3, 2021, and submitted it accordingly. *Id.* ¶ 115. Plaintiff alleges the Secret Service has never investigated his "Uber" comments. *Id.* ¶ 117.

## VI.     Non-Promotion in 2022 and Various Other Administrative Complaints

On January 16, 2022, Plaintiff bid on a promotion to Assistant to the Special Agent in Charge within the Talent Acquisition Division. Compl. ¶ 139. Plaintiff alleges the position is similar to a role he held in the private sector. *Id.* Plaintiff alleges that Ms. Yarwood prevented him from being promoted. *Id.* ¶ 146.

Plaintiff further alleges that he filed various administrative complaints related to the aforementioned events – including complaints to the Department of Homeland Security Office of Inspector General ("Inspector General") and the Secret Service's Office of Professional Responsibility (the "Inspections Division") on September 21, 2021; a second complaint to the Inspections Division on March 2, 2022; a second complaint to the Inspector General and a complaint to the Office of Special Counsel on March 3, 2022; a memorandum to Investigations on March 11, 2022; a third complaint to the Inspections Division on March 20, 2022; a fourth complaint to Inspections Division in June 2022. *Id.* ¶¶ 131, 144-45, 148-49, 153. Plaintiff alleges that Chief Yarwood did not suffer any consequences as a result of his complaints. *Id.* ¶ 154.

The Secret Service eventually selected Plaintiff in July 2022for a position for which bid at the James J. Rowley Training Center. *Id.* ¶ 155.

## PROCEDURAL BACKGROUND

On September 20, 2021, Plaintiff filed an informal Equal Employment Opportunity (EEO) complaint. *Id.* ¶ 130; Ex. 4 at 3, Formal EEO Complaint. Plaintiff filed his formal EEO Complaint on October 26, 2021. *Id.* ¶ 137; Ex. 4 at 2, Formal EEO Complaint. The Agency first sent a Notice of Acceptance of claims to Plaintiff on November 9, 2021. Ex. 5, Nov. 9, 2021, Notice of Acceptance Letter. After two amendments, the Agency issued a Notice of Acceptance on May 31, 2022. Ex. 6, Apr. 12, 2022, Am. Notice of Acceptance Letter; Ex. 7, May 31, 2022, 2d Am. Notice of Acceptance letter.

On May 5, 2023, the Agency issued a final decision finding no liability. *Id.* ¶ 13. Plaintiff appealed the decision, but his appeal was denied, and the finding of no liability was upheld on January 8, 2024. *Id.* ¶¶ 14-15.

On April 5, 2024, Plaintiff filed suit in this Court. Compl., ECF No. 1. Plaintiff alleges discrimination, retaliation, and a hostile work environment based on his race, religion, and color under Title VII in connection with (1) certain comments and incidents that Plaintiff perceived as offensive between 2011 and 2019 (Compl. ¶¶ 27-40); (2) the disqualification from two hard-to-staff openings on August 6, 2021 (*id.* ¶¶ 41-82); (3) the placement on paid administrative leave on September 3, 2021 (*id.* ¶¶ 83-106); (4) the requirement that he write a memorandum for the record on September 3, 2021, about his interaction with a protectee (*id.* ¶¶ 107-18); (5) the Agency's handling of his grievance and various administrative complaints between 2021 and 2022 (*id.* ¶¶ 119-55); and (6) his non-promotion from a January 16, 2022, bid (*id.* ¶¶ 139, 146).

## LEGAL STANDARD

A motion made under Rule 12(b)(6) tests whether a complaint has successfully "state[d] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While detailed factual allegations are not necessary to withstand a Rule 12(b)(6) challenge, a plaintiff must nonetheless provide "more than labels or conclusions" or "a formulaic" recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim is facially plausible only when a plaintiff pleads factual content that enables the Court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the Court must assume that any "well-pleaded factual allegations" in a complaint are accurate, conclusory allegations "are not entitled to the assumption of truth." *Id.* at 679. Furthermore, the Court "need not accept inferences drawn by the plaintiff if such inferences are unsupported by the facts set out in the complaint. Moreover, the court is not bound

to accept as true a legal conclusion couched as a factual allegation." *Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*, 937 F. Supp. 2d 18, 27 (D.D.C. 2013) (internal quotation marks and citations omitted). A complaint that "pleads facts that are merely consistent with a defendant's liability, [] stops short of the line between possibility and plausibility of entitlement to relief," and is insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 55, 557) (internal quotation marks omitted).

In considering a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *Wardrick v. Fed. Bureau of Prisons*, Civ. A. No. 19-0184, 2020 WL 1821133, at *4 (D.D.C. Apr. 10, 2020) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)). The Court may also consider "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 n.2 (D.D.C. 2011) (declining to convert motion to dismiss to summary judgment) (internal quotations and citations omitted). "'[W]here a document is referred to in the complaint or is central to the plaintiff's claims, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.'" *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D. D.C. 1999), *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002). "Moreover, a document need not be mentioned by name to be considered 'referred to' or 'incorporated by reference' into the complaint. Otherwise, 'a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.'" *Alston v. Johnson*, 208 F. Supp. 3d 293, 298 (D.D.C. 2016).

In particular, "[c]ourts have consistently recognized that it is appropriate to review both formal and informal agency-related documents without a converting a motion to summary judgment when a document is central to plaintiff's claim." *Burnside v. Dep't of Just.*, Civ. A. No. 20-2309 (TSC), 2022 WL 715181, at *4 (D.D.C. Mar. 10, 2022) (quotations omitted) (citing cases). "If courts could not take judicial notice of such public documents, plaintiffs who obviously had not complied with the administrative-exhaustion process could survive motions to dismiss purely by failing to attach their administrative complaint." *Vasser v. McDonald*, 228 F. Supp. 3d 1, 10 (D.D.C. 2016).

# ARGUMENT

## I. Plaintiff Failed to Exhaust Administrative Remedies as to Any Claims Related to Alleged Events Prior to September 20, 2021, or Alleged Failures to Investigate His Complaints.

Title VII requires a federal employee to exhaust administrative remedies before filing suit in federal court. *Spinelli v. Gross,* 446 F.3d 159, 162 (D.C. Cir. 2006); *Williams v. Brennan,* 320 F. Supp. 3d 122, 127-28 (D.D.C. 2018); *Hill v. Kempthorne*, 577 F. Supp. 2d 58, 64 (D.D.C. 2008) (collecting cases). To exhaust a claim, "[a]n employee of the federal government who believes he or she has been subject to discrimination is first required to 'initiate contact' with an EEO counselor within forty-five days of the allegedly discriminatory action." *Nguyen v. Mabus*, 895 F. Supp. 2d 158, 171 (D.D.C. 2012) (quoting 29 C.F.R. § 1614.105(a)(1)).  As the Supreme Court stated in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), "'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" *Id*. at 108 (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 825 (1980)). "The purpose behind the regulation is to provide the agency notice and an opportunity to rectify any wrong through the conciliation process or through administrative relief." *Howard v. Evans*, 193 F. Supp. 2d 221, 227–28 (D.D.C. 2002). Only after a plaintiff has timely sought

counseling and exhausted her administrative remedies may this Court hear the subject matter of a claim. *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985).

Critically, each discrete claim of discrimination or retaliation must be separately exhausted. *Terveer v. Billington*, 34 F. Supp. 3d 100, 112 (D.D.C. 2014) ("Since *Morgan*, courts in the District of Columbia Circuit have largely refused to take jurisdiction over unexhausted claims of discrete discriminatory acts, such as terminations that occur following the filing of an administrative charge."); *Hargrove v. AARP*, 205 F. Supp. 3d 96, 119 (D.D.C. 2016) ("The Court is convinced that the 'reasonably related' rule 'no longer reflects the state of the law.'"); *Mahmoud v. Libr. Of Cong.*, Civ. A. No. 20-1935 (JEB), 2021 WL 6808293, at *2 (D.D.C. Feb. 9, 2021). For hostile work environment claims, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Morgan*, 536 U.S. at 117. Nonetheless, this rule does not apply to acts that occur prior to the filing of an EEO complaint. *Wilson v. Clayton*, 272 F. Supp. 3d 25, 33 (D.D.C. 2017) (emphasis in original) (citing *Mount v. Johnson*, 36 F. Supp. 3d 74, 84 (D.D.C. 2014)) (noting that any "reasonably related" exception "only applies to claims of discrimination or retaliation that occur *after* the filing of an administrative complaint."); *Foxworth v. McDonough*, Civ. A. No. 23-2195 (TNM), 2024 WL 111761, at *5 (D.D.C. Jan. 10, 2024) ("If courts treated 'reasonably related' pre-EEO complaint conduct as exhausted, plaintiffs could wait until their federal lawsuit to raise allegations that should have been included in their administrative charge. Allowing plaintiffs to circumvent the exhaustion requirement in this way would undermine the agency's ability to investigate and administratively resolve discrimination claims.")

Nonetheless, "[i]n cases where the plaintiff did not object" to the claims outlined or accepted in an Agency's Notice of Acceptance Letter, courts have found "the plaintiff effectively

abandoned any claims that were not listed, and only the events in the Notice of Acceptance letter were administratively exhausted." *Bozgoz v. James*, Civ. A. No. 19-0239 (ABJ), 2020 WL 4732085, at *7 (D.D.C. Aug. 14, 2020); *see also, e.g.*, *Hartzler v. Mayorkas*, Civ. A. No. 20-3802 (GMH), 2022 WL 15419995, at *9 (D.D.C. Oct. 27, 2022) (finding failure to exhaust where agency's Notice of Acceptance letter did not mention claims); *Cheatham v. Holder*, 935 F. Supp. 2d 225, 237 (D.D.C. 2013) (finding failure to exhaust where agency did not include two claims in the issues it agreed to investigate and "[t]hroughout the investigation" the plaintiff "never indicated that the investigation was narrower than his EEO complaint"); *McKeithan v. Boarman*, 803 F. Supp. 2d 63, 68 (D.D.C. 2011) (finding that plaintiff's "'failure to respond to the [agency's] framing of the issue supports a finding that' a plaintiff has failed to exhaust his administrative remedies with respect to those claims not approved by the EEO" (quoting *Sellers v. Dep't of Def.*, Civ. A. No. 07-0418, 2009 WL 559795, at *11–12 (D.R.I. Mar. 4, 2009))); *Green v. Small*, Civ. A. No. 05-1055, 2006 WL 148740, at *6 (D.D.C. Jan. 19, 2006) (finding abandonment of claim alleged in an EEO complaint but not included in an agency's acceptance of claims letter where the complainant fails to respond to the agency's acceptance of claims letter).

Here, Plaintiff made initial contact with an EEO counselor on September 20, 2021. Compl. ¶ 130; Ex. 4 at 3, Formal EEO Complaint. Therefore, Plaintiff has only exhausted claims for incidents that occurred within 45 days prior to September 20, 2021, which was August 6, 2021. As a result, to the extent that Plaintiff raises discrete discrimination or retaliation claims or bases his hostile work environment claim on any alleged events that occurred prior to August 6, 2021, he has failed to timely exhaust administrative remedies for those claims for failure to raise those claims with an EEO counselor within forty-five days of each incident. In particular, Plaintiff has failed to exhaust any discrete discrimination, discrete retaliation, or hostile work environment

claims that are predicated on the alleged comments and actions by Mr. Hackney or Mr. O'Connor prior to August 6, 2021, or Defendant's alleged handling of Plaintiff's complaints about Mr. Hackney or Mr. O'Connor. Compl. ¶¶ 27-40. All these alleged actions occurred between 2011 and 2019, at least two years prior to his initial EEO contact in September 2021. *See id.* Moreover, Plaintiff never amended his administrative complaint to include these claims, and the Secret Service never accepted any of Plaintiff's claims related to these pre-August 6, 2021, allegations. *See* Ex. 5, Nov. 9, 2021, Notice of Acceptance Letter; Ex. 6, Apr. 12, 2022, Am. Notice of Acceptance Letter; Ex. 7, May 31, 2022, 2d Am. Notice of Acceptance letter.

Additionally, Plaintiff never raised any claims in his EEO Complaint related to the handling of his grievance or other myriad administrative complaints (particularly the Agency's alleged decision not to impose discipline on any of the decisionmakers) between 2021 and 2022 to the Office of Inspector General, the Agency's Office of Professional Responsibility, the Office of Special Counsel, "Inspections," and the Agency's Anti-Harassment Program. Compl. ¶¶ 119-55. Ex. 4, Formal EEO Complaint. Nor did the Agency accept any such claims. *See* Ex. 5, Nov. 9, 2021, Notice of Acceptance Letter; Ex. 6, Apr. 12, 2022, Am. Notice of Acceptance Letter; Ex. 7, May 31, 2022, 2d Am. Notice of Acceptance letter.

Thus, the Court should dismiss Plaintiff's discrete discrimination and retaliation claims, and any hostile work environment claims to the extent they are predicated on events that occurred prior to August 6, 2021, or on the alleged handling of or decisions regarding his 2021 and 2022 administrative complaints. *See* Compl. ¶¶ 27-40, 119-154.

## II.    **Plaintiff Fails to Allege Any Discrete Discrimination or Retaliation Claim.**

To state a *prima facie* case for Title VII discrimination, a plaintiff must establish that: "(1) []he is a member of a protected class; (2) []he suffered an adverse employment action; and (3) the

unfavorable action gives rise to an inference of discrimination." *Chappell-Johnson v. Powell*, 440 F.3d 484, 488 (D.C. Cir. 2006) (internal citations omitted).

For a Title VII retaliation claim, "the plaintiff must allege that []he engaged in protected activity . . . , the employer took adverse action against h[im], and the employer took that action because of the employee's protected conduct." *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015) (citation omitted); *see also Drasek v. Burwell*, 121 F. Supp. 3d 143, 162 (D.D.C. 2015) (citing *Alexander v. Tomlinson*, 507 F. Supp. 2d 2, 17 (D.D.C. 2007)).

For the reasons stated below, Plaintiff fails to allege sufficient allegations to support any of his discrete discrimination and retaliation claims.

### A.   Plaintiff Cannot Raise a Discrimination or Retaliation Claim Based on the Agency's Handling of his Administrative Complaints.

Plaintiff has no separate cause of action under Title VII related to the handling of his administrative complaints, assuming he exhausted that claim (which he did not, *see supra* § I). In his Complaint, Plaintiff appears to allege that the Secret Service retaliated against him by not otherwise disciplining certain Agency employees in response to his multiple informal administrative complaints and formal complaints to the Office of Inspector General, the Agency's Office of Professional Responsibility, "Inspections," the Office of Special Counsel, and the Agency's Anti-Harassment Program, as to how these employees handled his bids for the two hard-to-staff positions. Compl. ¶¶ 119-54. Plaintiff's allegations fail as a matter of law.

Title VII "does not create an independent cause of action for the mishandling of an employee's discrimination complaints." *Wilson v. Dep't of Trans.*, 759 F. Supp. 2d 55, 62 (D.D.C. 2011) (quoting *Young v. Sullivan*, 733 F. Supp. 131, 132 (D.D.C. 1990)); *Caison v. DeJoy*, Civ. A. No. 23-2414 (LLA), 2024 WL 1576780, at *2 (D.D.C. Apr. 11, 2024). "To the extent that an agency's improper processing of an administrative complaint results in the agency's failure to

address the underlying violation of an anti-discrimination statute, this harm to the employee can be remedied through the employee's right of action in federal court." *Koch v. White*, 967 F. Supp. 2d 326, 336 (D.D.C. 2013) (dismissing Plaintiff's claims related to processing of his EEO complaint); *Diggs v. Potter*, 700 F. Supp. 2d 20, 46 (D.D.C. 2010) ("[T]here is no cause of action for federal employees to bring retaliation or discrimination claims based on complaints of delay or interference in the investigative process." (internal quotation marks omitted)); *see also Smith v. Casellas*, 119 F.3d 33, 34 (D.C. Cir. 1997) (finding "no cause of action against the EEOC exists for challenges to its processing of a claim."). Here, Plaintiff's remedy for any perceived mishandling of his administrative complaints is this Title VII suit in federal court, or the relevant remedial scheme for those other non-EEO administrative complaints. Therefore, Plaintiff's discrete discrimination or retaliation claims related to the handling and decisions regarding his various administrative complaints should be dismissed. *See* Compl. ¶¶ 119-54

**B.    Many of the Alleged Actions Are Not Adverse.**

Plaintiff's placement on a twelve-day administrative leave with pay, the requirement that he write a memorandum for the record in connection with a protectee's complaint, and the allegedly offensive comments and actions that occurred between 2011 and 2019 (to the extent he has properly exhausted them, which he has not, *see supra* § I), are not adverse for purposes of his discrete discrimination or retaliation claims.

1.    Legal Standard for Discrimination Claims

The federal sector provisions of Title VII provide that "[a]ll personnel actions affecting employees or applicants for employment . . . shall be made free from any discrimination[.]" 42 U.S.C. § 2000e-16(a).  The Civil Service Reform Act defines "personnel actions" to include an appointment, promotion, disciplinary action, transfer or reassignment, reinstatement, decision concerning pay, benefits, or awards. 5 U.S.C. § 2302(a)(2)(A)(i)–(xi).  This definition includes

other, unenumerated "change[s] in duties, responsibilities, or working conditions" only if they are "significant." *Id.* The Supreme Court in *Babb v. Wilkie*, 589 U.S. 399, 405 (2020), agreed that the Civil Service Reform Act's definition of "personnel action" was "consistent with the term's meaning in general usage," and assumed it had the same meaning for purposes of the federal-sector provisions of the Age Discrimination in Employment Act ("ADEA"), which parallel those of Title VII. *Compare* 29 U.S.C. § 633a(a) (ADEA), *with* 42 U.S.C. § 2000e-16(a) (Title VII).

The Court in *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (Apr. 17, 2024), recently clarified the standard applicable to private and state and local government employers for assessing the existence of an adverse action under Title VII. *Id.* at 974–76 (discussing 42 U.S.C. § 2000e-2(a)(1)). In *Muldrow*, the Supreme Court rejected a reading requiring an employee to demonstrate that an alleged transfer resulted in "significant" harm to be actionable under the non-federal provisions of Title VII. *Id.* The Court reasoned that while an employee "must show *some harm* respecting an identifiable term or condition of employment" the employee need not show that harm caused "significant disadvantages[.]" *Id.* at 974 (emphasis added; "To make out a Title VII discrimination claim, a transferee must show some harm respecting an identifiable term or condition of employment. What the transferee does not have to show, according to the relevant text, is that the harm incurred was 'significant.'"). Notably, the Court's holding in *Muldrow* effectively displaces the decision rendered by the en banc D.C. Circuit in *Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022). *See Muldrow*, 144 S. Ct. at 979–80 (Kavanaugh, J., concurring) (noting that the Court's standard of "some harm" differs from that described in *Chambers*).

Accordingly, were the federal sector provisions of Title VII coextensive with those applicable to non-federal employers, an employee attempting to bring a Title VII claim must

identify an alleged event affecting their "compensation, terms, conditions, or privileges of employment" that caused "some harm." *Id.* But the provisions at issue here applicable to Defendant differ from those applicable to non-federal employers. The non-federal provision of Title VII (§ 2000e-2(a)(1)) considered by the Court in *Muldrow* uses different language from the provision of Title VII applicable to the federal government (§ 2000e-16(a)). Specifically, the non-federal provisions of Title VII outlaw discrimination "with respect to [an employee's] compensation, terms, conditions, or privileges of employment," 42 U.S.C. § 2000e-2(a)(1), whereas the federal provisions prohibit discrimination with respect to "personnel actions," 42 U.S.C. § 2000e-16(a). The Court should honor Congress's choice to create different standards for federal and non-federal employers and apply the text of Title VII as written.

The difference in wording is meaningful as the Supreme Court has ruled in considering similar text in the ADEA, which has different provisions for federal and non-federal employers. *Babb*, 589 U.S. at 410 ("as we previously recognized, the ADEA's private- and public-sector provisions are 'couched in very different terms'" (quoting *Gomez-Perez v. Potter*, 553 U.S. 474, 487 (2008)). In *Gomez-Perez*, the Court considered the wording of the ADEA's federal sector provision, holding, "[t]he ADEA federal-sector provision was patterned 'directly after' Title VII's federal-sector discrimination ban." 553 U.S. at 487 (comparing text and collecting citations). In so doing, the Court noted that while "Title VII's federal-sector provision incorporates certain private-sector provisions" it does not incorporate them all. *Id.*

In *Babb*, 589 U.S. at 410, the Supreme Court further explained the differences in the wording of the federal and non-federal provisions of the ADEA, which again are almost identical to those found in Title VII. *See id.* The Court emphasized that equating the scope of the two provisions was misplaced when they used different words. It noted, "Congress could have easily"

used the same language in both provisions "[b]ut Congress did not choose this route. Instead, it

'deliberately prescribed a distinct statutory scheme applicable only to the federal sector,' and in

doing so, it eschewed the language used in the private-sector provision[.]" *Id.* at 412 (citations

omitted).  In considering the distinct federal sector provisions of the ADEA, the Court observed

that the ADEA's federal sector provisions, as those of Title VII, concern "personnel actions." *Id.*

at 405.  Specifically, it reasoned:

> Section 633a(a) concerns "personnel actions," and while the ADEA does not define
> this term, its meaning is easy to understand. The Civil Service Reform Act of 1978,
> which governs federal employment, broadly defines a "personnel action" to include
> most employment-related decisions, such as appointment, promotion, work
> assignment, compensation, and performance reviews. *See* 5 U.S.C.
> § 2302(a)(2)(A).  That interpretation is consistent with the term's meaning in
> general usage, and we assume that it has the same meaning under the ADEA.

*Id.*

Some judges in this District have declined to adopt this straightforward textual application

of the Title VII and ADEA federal sector standards in the wake of *Chambers*, relying on pre-*Babb*

precedents such as *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), which construed

Title VII's federal and non-federal provisions as coterminous.  *See, e.g.*, *Bain v. Off. of Att'y Gen.*,

Civ. A. No. 21-1751 (RDM), 2022 WL 17904236, at *21 (D.D.C. Dec. 23, 2022) (citing pre-*Babb*

authorities); *Garza v. Blinken*, Civ. A. No. 21-2770 (APM), 2023 WL 2239352, at *5 (D.D.C.

Feb. 27, 2023) (same).  Respectfully, following this path runs contrary to the clear and necessary

holding of *Babb* and the plain text of the federal anti-discrimination provisions.  For example, in

*Czekalski*, the D.C. Circuit in setting forth the standard for an adverse action noted that while the

federal sector "language differs from that of the provision governing private employers, we have

held that the two contain identical prohibitions." *Czekalski*, 475 F.3d at 363 (citation omitted;

collecting cases).  But in *Babb*, decided in 2020 more than a decade after the D.C. Circuit's

decision in *Czekalski*, the Supreme Court rejected that theory and, instead, held that when anti-

discrimination statutes use different language in their federal and non-federal provisions they should not be interpreted the same.  *Babb*, 589 U.S. at 411 (the federal sector provision of the ADEA, which are nearly identical to Title VII, "is markedly different from the language" of its non-federal provision and warrants a different standard).

Accordingly, for an event to be actionable under the federal sector provisions of Title VII (and the ADEA) the identified event must either be an enumerated "personnel action" under the Civil Service Reform Act, 5 U.S.C. § 2302(a)(2)(A)(i)–(xi), or fall into that term's catch-all (i.e., "any other significant change in duties, responsibilities, or working conditions[,]"  5 U.S.C. § 2302(a)(2)(A)(xii)) and that the employee suffer "some harm" from the alleged event (i.e., that the event was "adverse").

### 2.    Legal Standard for Retaliation Claims

For purposes of Title VII retaliation, "actions giving rise to [retaliation] claims are not limited to discriminatory actions that affect the terms and conditions of employment, but reach any harm that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Baird v. Gotbaum*, 662 F.3d 1246, 1249 (D.C. Cir. 2011) (quotation marks omitted). Yet not every adverse action will support a retaliation claim. The qualification requiring material adversity "separate[s] significant from trivial harms" and forbids claims based on "petty slights, minor annoyances, and simple lack of good manners." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67-68 (2006). Further, restrictions that "impose[] a negligible burden on the plaintiff's employment conditions mitigate any deterrent effect a reasonable employee would ascribe to them." *Baloch v. Norton*, 517 F. Supp. 2d 345, 356 (D.D.C. 2007), *aff'd*, 550 F.3d 1191 (D.C. Cir. 2008).

3.  Placement on Short, Paid Administrative Leave

Plaintiff fails to allege that he suffered any adverse action as a result of being placed on administrative leave for twelve days with pay pending an investigation into his alcohol use.

For purposes of his discrimination claim, Plaintiff does not demonstrate any personnel action he suffered, let alone a significant change to his duties, responsibilities, or working conditions, by being placed on this paid leave. *See* Compl. ¶¶ 83-106. Indeed, as the September 2, 2021, Administrative Leave Memorandum that Plaintiff signed made clear, he continued to be paid while he was on administrative leave. *Id.* ¶ 102 (incorporating by reference "an administrative leave memorandum authorized by Andrew Cannady"); Ex. 3 at 2, Sept. 2, 2021, Admin. Leave Mem. Moreover, the length of Plaintiff's paid leave was short (twelve days), and he does not allege that he suffered any actual consequences to his duties, responsibilities, salary, career trajectory, or other benefit of his employment that were a result of his placement on administrative leave. *See* Compl. ¶¶ 83-106. Plaintiff alleges that he returned to duty after being placed on administrative leave and was later selected for a position at the James J. Rowley Training Center, for which he had bid and which he had previously desired. *Id.* ¶¶ 41, 125, 155.

Indeed, specifically as to retaliation, while the D.C. Circuit has expressly left open the question whether paid administrative leave is materially adverse, *Hornsby v. Watt*, No. 17-5001, 2017 WL 11687516, at *1 (D.C. Cir. Nov. 14, 2017), there is a near consensus in the district courts that paid administrative leave pending an investigation, as Plaintiff alleges here, does not constitute materially adverse action. *See Wesley v. Georgetown Univ.*, Civ. A. No. 18-1539 (BAH), 2018 WL 5777396, at *6 (D.D.C. Nov. 2, 2018) (citing cases); *Hornsby v. Watt*, 217 F. Supp. 3d 58, 66–67 (D.D.C. 2016); *Jones v. Castro*, 168 F. Supp. 3d 169, 179 (D.D.C. 2016) (no materially adverse action based on failure to reinstate employee from administrative leave pending an internal investigation); *Hockaday v. Wash. Metro. Area Transit Auth.*, Civ. A. No. 21-3265 (TNM), 2023

WL 3844388, at *8 (D.D.C. June 6, 2023), *aff'd*, No. 23-7085, 2024 WL 2229699 (D.C. Cir. May

17, 2024); *Reid v. Buttigieg*, Civ. A. No. 20-1262 (TJK), 2023 WL 2184549, at *12 (D.D.C. Feb.

23, 2023) (no materially adverse action from placement on paid administrative leave pending

investigation of allegations since "paid leave imparts no tangible consequences"); *Hunter v.

District of Columbia*, 905 F. Supp. 2d 364, 374 (D.D.C. 2012) (administrative leave placement

was not adverse as it "was paid, [] lasted only ten days, [] did not result in disciplinary action being

taken, and plaintiff returned to the same job responsibilities, pay, grade, and benefits after it

concluded."), *aff'd*, No. 13-7003, 2013 WL 5610262 (D.C. Cir. Sept. 27, 2013).

In sum, the Court should find that Plaintiff has failed to allege for either his discrete

discrimination or retaliation claim that he suffered an adverse action when he was placed on paid

administrative leave. *See* Compl. ¶¶ 83-106.

4.    Requirement to Write Memorandum About Protectee's Complaint

Plaintiff's allegations about being required to write a memorandum of record amount to a

complaint that the Secret Service initiated some kind of investigation into a protectee's complaint

about him or was otherwise imposing increased scrutiny on his protection work. *See* Compl.

¶¶ 107-18.

For his discrimination claim, Plaintiff does not demonstrate any personnel action he

suffered, let alone a significant change to his duties, responsibilities, or working conditions, by

being asked to write a memorandum for the record about his interaction with the protectee on

August 28, 2021. Plaintiff alleges that no further investigation resulted after he wrote the

memorandum for the record. Compl. ¶ 117. And he alleges no other disciplinary action or other

personnel action he experienced as a result of the memorandum. *See id.* ¶¶ 107-18.

As to retaliation, courts in this district have repeatedly held that "although the discipline

imposed as a result of an investigation may have a sufficiently adverse effect on plaintiff's

employment to be actionable, the mere initiation of the investigation does not." *Holmes v. Wash. Metro. Area Transit Auth.*, Civ. A. No. 22-1478 (JEB), 2024 WL 864217, at *10 (D.D.C. Feb. 29, 2024) (cleaned up) (citing cases); *King v. Holder*, 77 F. Supp. 3d 146, 151 (D.D.C. 2015) (citing *Ware v. Billington*, 344 F. Supp. 2d 63, 76 (D.D.C. 2004)). "The only exception is when initiation of an investigation itself triggers other legal consequences." *Holmes*, 2024 WL 864217, at *10; *Lilly v. District of Columbia*, 657 F. Supp. 3d 65, 94 (D.D.C. 2023). Additionally, to the extent Plaintiff complains that he was "singled out" to write this memorandum for record, *see* Compl. ¶ 107-18, courts are "near unanimous in concluding that close scrutiny, monitoring, or tracking . . . simply does not rise to the level of a materially adverse retaliatory action sufficient to survive a motion to dismiss." *Wright v. Garland*, Civ. A. No. 17-1081 (EGS/GMH), 2022 WL 17584011, at *9 (D.D.C. Dec. 12, 2022) (quotations omitted) (finding assignment to two supervisors instead of one was not materially adverse); *Davila v. Mayorkas*, Civ. A. No. 22-0357 (CRC), 2023 WL 2072455, at *8 (D.D.C. Feb. 17, 2023) (finding that suggestion that a supervisor monitor Plaintiff "more closely" was not materially adverse); *Aldrich v. Burwell*, 197 F. Supp. 3d 124, 132 (D.D.C. 2016) (finding issuance of leave restriction was not materially adverse). Like in these cases, as noted above, Plaintiff does not allege that he suffered any actual consequences to his duties, responsibilities, salary, career trajectory, or other benefit of his employment because of this memorandum writing requirement. *See* Compl. ¶¶ 107-18.

To the extent that Plaintiff alleges that he was placed or kept on paid administrative leave as a result of having to write this memorandum, *see id.* ¶ 116, placement on paid administrative leave is not adverse for the reasons stated above, *see supra* § II.B.3. But even if it were, Plaintiff's allegation is not supported by the document that Plaintiff incorporates by reference into his Complaint. In his Complaint, Plaintiff references "an administrative leave memorandum

authorized by Andrew Cannady." Compl. ¶ 102. That administrative leave memorandum is dated September 2, 2021, and explicitly states that Secret Service was placing Plaintiff on paid administrative leave "based on concerns regarding [his] use of alcohol." Ex. 3 at 2, Sept. 2, 2021, Admin. Leave Mem. Nowhere does the memorandum state that Plaintiff was placed on paid leave due to the protectee's complaints from his August 28, 2021, drive. *See id.* And Plaintiff provides no other allegations on which this Court can make any reasonable inference he was placed on leave due to that memorandum he was required to write, beyond his conclusory statement. *See* Compl. As a result, Plaintiff is unable to raise a reasonable inference that his memorandum led to his placement on paid administrative leave.

Because the Court "need not accept inferences drawn by the plaintiff if such inferences are unsupported by the facts set out in the complaint," *Jack's Canoes & Kayaks*, 937 F. Supp. 2d at 27 (internal quotation marks and citations omitted), Plaintiff fails to allege that he suffered he suffered an adverse action for either discrimination or retaliation from having to write the memoranda for the record for his August 28, 2021 drive with the protectee.  *See* Compl. ¶¶ 107-18.

### 5.   Alleged Offensive Comments or Conduct

Any alleged offensive or harassing conduct Plaintiff may have experienced between 2011 and 2019 are also not adverse as a matter of law. *See* Compl. ¶¶ 27-40. The Supreme Court has cautioned Courts against letting federal employee discrimination statutes become "general civility code[s]" for unhappy employees. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Indeed, the D.C. Circuit has specifically warned Courts against becoming "super-personnel department[s] that reexamine[ ] an entity's business decisions." *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006) (quoting *Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999)). As such, "purely subjective injuries," such as public humiliation or loss of reputation, are not adverse

actions for either discrimination or retaliation. *Holcomb*, 433 F.3d at 902; *see also Chambers*, 35 F.4th at 874 ("[N]ot everything that happens at the workplace affects an employee's 'terms, conditions, or privileges of employment[.]'"). Here, Plaintiff alleges only subjective injuries based on interactions with Mr. Hackney and Mr. O'Connor. *See* Compl. ¶¶ 27-40. Plaintiff therefore fails to allege any adverse action because of these incidents. *See, e.g.*, *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008) (declining to find "profanity-laden yelling" to constitute an actionable adverse action and holding that threatened suspension was not materially adverse where the suspension was not carried out); *McCallum v. Mayorkas*, Civ. A. No. 21-1911 (ABJ), 2023 WL 3203011, at *12 (D.D.C. May 2, 2023) (finding that certain comments or emails that Plaintiff "perceived . . . as a slight" was not adverse for purposes of discrimination).

In sum, the Court should dismiss Plaintiff's discrete discrimination and retaliation claims based on his placement on paid administrative leave, the requirement that he write a memorandum about his interaction with a protectee, and any alleged offensive comments or events.

## C. Plaintiff Also Fails to Allege Sufficient Facts to Support His Remaining Retaliation Claims.

Plaintif alleges that the Secret Service retaliated against him when they (1) disqualified him from two hard-to-staff job openings on August 6, 2021 (Compl. ¶¶ 41-82); (2) placed him on paid administrative leave on September 3, 2021 (*id.* ¶¶ 83-106); (3) required him to write on September 3, 2021, a memorandum for the record about a protectee's complaint (*id.* ¶¶ 108-18); and (4) and did not promote him in 2022 (*id.* ¶¶ 139, 146). With regards to the 2022 non-promotion, Plaintiff's allegations amount to conclusory assertions. As to the three other alleged events, Plaintiff fails to allege sufficient facts to demonstrate that the Agency took these alleged actions "because of" Plaintiff's prior protected activity. For these reasons, Plaintiff's retaliation claims based on these allegations should be dismissed.

1.     Plaintiff Fails to Allege That Secret Service Took Many of the Actions
       <u>Because of a Prior Protected Activity.</u>

The Court should dismiss Plaintiff's retaliation claims that are premised on his

disqualification him from two hard-to-staff openings on August 6, 2021, paid administrative leave

placement on September 3, 2021, and requirement that he write a memorandum for the record

about a protectee's complaint on September 3, 2021. Plaintiff fails to allege that the Secret Service

took any of these actions "because of" his prior protected conduct.

First, Plaintiff fails to allege that any of the alleged actions occurred "because of" a

complaint of racial harassment in 2015 and then a later attempt to file a complaint around

December 2019. *See* Compl. ¶¶ 32-38. To demonstrate that an employer took action "because of"

an employee's protected conduct, Plaintiff "must establish that his or her protected activity was a

but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*,

133 S. Ct. 2517, 2534 (2013).

The alleged prior protected activities in 2015 and 2019 occurred far too long in time to

establish an inference of retaliation as a matter of law. "While an adverse personnel action that

occurs 'shortly' after protected activity may give rise to an inference of causation, action that

transpires more than three or four months after protected activity are less likely to create causal

inferences." *Paulk v. Architect of the Capitol*, 79 F. Supp. 3d 82, 91 (D.D.C. 2015) (internal

citations and quotation marks omitted); *Short v. D.C. Dep't of Corr.*, Civ. A. No. 23-0261 (RC),

2024 WL 1213769, at *7 (D.D.C. Mar. 20, 2024) (explaining that five-month gap between

protected activity and administrative leave placement was "generally too long to give rise to a

causal inference."); *Williams v. Spencer*, 883 F. Supp. 2d 165, 178 (D.D.C. 2012) ("The gap of

five months or more between plaintiff's disclosures and her termination undermines any causal

inference [of retaliation]."); *Greer v. Bd. of Trs. of Univ. of D.C.*, 113 F. Supp. 3d 297, 311 (D.D.C.

2015) ("When relying on temporal proximity alone to demonstrate causation, there is no bright-line rule, although three months is perceived as approaching the outer limit." (citing *Hamilton v. Geithner,* 666 F.3d 1344, 1357–58 (D.C. Cir. 2012)). In this light, Plaintiff cannot demonstrate any temporal proximity based on these alleged complaints. At least two years had elapsed between the alleged December 2019 threat to report alleged harassment and the alleged events from September 2021, and at least six years had elapsed between his alleged harassment complaint in 2015 and the alleged 2021 events.

Furthermore, Plaintiff does not ever allege that any of the decisionmakers for his August 2021 disqualification, September 2021 paid administrative leave placement, or September 2021 memorandum writing requirement even knew about his alleged 2015 or 2019 complaints. *See* Compl. ¶¶ 41-118. "It is common sense that plaintiff's supervisors could not have retaliated against [him] unless they had knowledge of [his] protected activity." *Robinson-Douglas v. Coastal Int'l Sec., Inc.*, 287 F. Supp. 3d 14, 21 (D.D.C. 2018) (internal quotation marks omitted) (quoting *Jones v. Bernanke*, 557 F.3d 670, 680 (2009)); *Talavera v. Shah*, 638 F.3d 303, 313 (D.C. Cir. 2011) ("To prove unlawful retaliation [the plaintiff] had to show that [the person] . . . who made the [selection] had knowledge of her protected activity."); *Chandler v. Gruenberg*, 266 F. Supp. 3d 355, 359-60 (D.D.C. 2017) (dismissing retaliation complaint where plaintiff failed to allege the decision makers were aware of protected activity).

Second, Plaintiff cannot rely on his August 9, 2021, informal grievance to establish his retaliation claim. *See* Compl. ¶ 75. As an initial matter, Plaintiff's informal grievance occurred after Secret Service had already disqualified Plaintiff from the two positions on August 6, 2021; thus, the grievance is not "prior" protected activity for purposes of his retaliation claim related to his disqualification from the two hard-to-staff openings. As to other alleged events that occurred

subsequently, Plaintiff fails to establish that the informal grievance constituted "protected activity."

Under Title VII, an employee engages in protected activity when he has "opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006). Even then, "[n]ot every complaint garners its author protection under Title VII," and "the complaint must in some way allege unlawful discrimination, not just frustrated ambition." *Broderick*, 437 F.3d at 1232. "[A]mbiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity." *Bowyer v. District of Columbia*, 910 F. Supp. 2d 173, 209 (D.D.C. 2012) (quotation omitted), *aff'd*, 793 F.3d 49 (D.C. Cir. 2015); *Bell v. Raimondo*, Civ. A. No. 19-3109 (CJN), 2023 WL 2662914, at *5 (D.D.C. Mar. 28, 2023) ("A complaint of being 'picked on,' without mentioning discrimination based on one's protected class, does not constitute protected activity, even if the employee honestly believes that she is the subject of discrimination."). And "[a]lthough courts have held that protected 'opposition' activity need not be an explicit discrimination complaint voiced by the plaintiff and communicated to her employer, the law requires, in the absence of such a complaint, that a Title VII plaintiff's 'opposition' activity must in some way relate to allegations that would plainly signal discrimination if they were true." *Wang v. Wash. Metro. Area Transit Auth.*, 206 F. Supp. 3d 46, 79–80 (D.D.C. 2016).

Applying these principles, Plaintiff fails to support his allegation that he engaged in protected activity by filing the informal grievance. Plaintiff never alleges that the informal grievance concerned any claim of discrimination related to his race, color, or religion. *See* Compl.

¶ 75. Indeed, the informal grievance that he incorporates by reference into his Complaint, *id.*, does not make any mention that Plaintiff believed he had been unlawfully disqualified because of discrimination. Ex. 1, Aug. 9, 2021, Informal Grievance (Excerpt). Without any mention of discrimination, let alone discrimination based on a protected class, Plaintiff's grievance does not constitute activity protected under Title VII. *See Clemmons v. Acad. for Educ. Dev.*, 107 F. Supp. 3d 100, 130 (D.D.C. 2015) (grievance that "did not expressly invoke race discrimination" did not constitute prior protected activity under Title VII); *Mulkerin v. Bunch*, Civ. A. No. 19-3850, 2021 WL 3771806, at *2 (D.D.C. 2021) (call to ombudsman about scheduling for family childcare needs did not constitute prior protected activity); *Bell*, 2023 WL 2662914, at *5 (emails generally complaining about traffic and noise around employee's desk did not constitute prior protected activity); *Golden v. Mgmt. & Training Corp.*, 266 F. Supp. 3d 277, 285 (D.D.C. 2017) (general administrative complaints did not constitute statutorily protected activity).

Plaintiff also cannot salvage his retaliation claim by pointing to an alleged conversation he had with Ms. Watson on August 31, 2021, in which he allegedly "expressed frustration at the barriers that racial discrimination had placed in the path of his career." Compl. ¶¶ 77-79. As an initial matter, Plaintiff's disqualification from the hard-to-staff openings occurred before that conversation, and therefore that conversation would still not qualify as "prior" protected activity. Additionally, on its face, Plaintiff's complaint amounts to merely the "frustrated ambition" about the general trajectory of his career that the D.C. Circuit has rejected as protected activity under Title VII. *See Broderick*, 437 F.3d at 1232. Because his allegation is merely a general, ambiguous observation about "racial barriers" without any specific reference to a particular event that he believes was a product of discrimination or his opposition to such, it does not qualify as protected activity. *See Bowyer*, 910 F. Supp. 2d at 209; *Bell*, 2023 WL 2662914, at *6 (finding that vague

comments disapproving of discrimination were "ambiguous" and did not constitute protected activity); *Harris v. Trs. of Univ. of D.C.*, 567 F. Supp. 3d 131, 150 (D.D.C. 2021) ("A frustrated outburst to one's boss is not a protected activity, absent some connection to an attempt to vindicate rights under the statute."); *Soliman v. George Wash. Univ.*, 658 F. Supp. 2d 98, 103 (D.D.C. 2009) (finding plaintiff did not allege participation in protected activity where "she merely recounts her repeated informal communications to her department chair complaining of vague discriminatory conduct, and later, her lawyer's more formal communications on the same subject").

But even assuming Plaintiff's ambiguous observation could be construed as some kind of opposition, Plaintiff fails to allege that any of the decisionmakers for the paid administrative leave placement and writing of the memo that occurred after that conversation were ever aware of the content of his call with Ms. Watson. *See* Compl. ¶¶ 83-118. Plaintiff does not allege that Ms. Watson was ever the decisionmaker for the paid administrative leave placement or the writing of the memo. *See id.* ¶¶ 83-106. While Plaintiff alleges that Ms. Watson contemporaneously documented her August 31, 2021, conversation with Plaintiff in a Memorandum for the Record that was later circulated to relevant decisionmakers, *id.* ¶¶ 83-84, Ms. Watson's memorandum never mentions that Plaintiff complained of any kind of discrimination on that call. Ex. 2, Sept. 1, 2021, Watson Mem. Nor does Plaintiff allege that the relevant decisionmakers were aware by some other method that he had made such complaint about discrimination to Ms. Watson on that call. *See generally* Compl.

As a result, the first time Plaintiff plausibly raised any kind of discrimination complaint based on a Title VII protected class was his informal EEO Complaint filed on September 20, 2021. Compl. ¶ 130; Ex. 4 at 3, Formal EEO Complaint. Since the disqualification from the two hard-to-staff openings on August 6, 2021, the placement on paid administrative leave on September 3,

2021, and the requirement he write a memo on September 3, 2021, all occurred before his September 20, 2021, informal EEO Complaint, Plaintiff fails to establish that the Secret Service took any of these actions because of his prior protected activity. *See Lewis v. District of Columbia*, 653 F. Supp. 2d 64, 79 (D.D.C. 2009) ("The fact that the allegedly retaliatory actions preceded the protected activity precludes a determination that the protected activity caused the defendant to retaliate against the plaintiff." (citation omitted)). Thus, the Court should dismiss Plaintiff's retaliation claim in connection with these alleged events.

> 2.    Plaintiff Fails to Allege Any Sufficient Facts Related to His Non-
>        Promotion in 2022.

The only other alleged actionable incident that occurred after Plaintiff's September 2021 EEO Complaint is an apparent non-promotion in 2022. Plaintiff's retaliation claim on this basis, however, should also be dismissed. In his Complaint, Plaintiff alleges that "On January 16, 2022, Mr. Ellis bid for a promotion to ATSAIC within the Talent Acquisition Division, similar to a role Mr. Ellis previously held in the private sector." Compl. ¶ 139. He then alleges "In response to Susan Yarwood preventing him from being promoted, Mr. Ellis notified EEO of his intent to file a second EEO complaint against Chief Yarwood for retaliation." *Id.* ¶ 146. These are the only allegations Plaintiff posits related to the apparent non-promotion. *See generally* Compl.

While a plaintiff is not required to plead every fact necessary to establish a *prima facie* case to survive a motion to dismiss, "at the motion-to-dismiss stage, the guiding lodestar is, [] assuming the truth of the factual allegations, taken collectively, whether the inferences of discrimination drawn by the plaintiff are reasonable and plausibly supported." *Townsend v. United States*, 236 F. Supp. 3d 280, 298 (D.D.C. 2017) (citing *Nurriddin v. Bolden*, 818 F. 3d 751, 756 (D.C. Cir. 2016) (noting that the court "need not, however accept inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint.") (internal quotations

omitted)). Common to the pleading of all disparate treatment cases is the requirement to plead facts that either directly or indirectly give rise to an inference of prohibited activity. *See, e.g.*, *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002) (*prima facie* claim of disparate treatment requires that the adverse employment action gives rise to an inference of discrimination).

Simply asserting retaliation is not enough to survive a motion to dismiss. *See Horsey v. Dep't of State*, 170 F. Supp. 3d 256, 263 (D.D.C. 2016); *Menoken v. McGettigan*, 273 F. Supp. 3d 188, 202-03 (D.D.C. 2017) (dismissing plaintiff's retaliation claims for failing to allege facts which would establish the inference of retaliation); *Wells v. Hense*, 235 F. Supp. 3d 1, 9-10 (D.D.C. 2017) (requiring complaint to plead facts plausibly suggesting an action was taken because of protected activity); *Cavalier v. Catholic Univ. of Am.*, 306 F. Supp. 3d 9, 37-38 (D.D.C. 2018) (same). Thus, "[w]hile a plaintiff is not required to plead each element of [a] *prima facie* case to survive a motion to dismiss, the Court may explore the plaintiff's *prima facie* case at the dismissal stage to determine whether the plaintiff can ever meet his initial burden to establish a *prima facie* case." *Brantley v. Kempthorne*, Civ. A. No. 06-1137 (ESH), 2008 WL 2073913, at *24 (D.D.C. May 13, 2008) (cleaned up); *Menoken*, 273 F. Supp. 3d at 201-02; *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 72 (D.D.C. 2007).

Here, Plaintiff fails to allege any facts whatsoever related to the 2022 non-promotion. Indeed, Plaintiff does not even propound any basic allegations of when he was denied the promotion, whom he believes specifically denied him the promotion, or why he believes he was more qualified than the selectee. Without any of these basic allegations, Plaintiff's conclusory allegations that he filed an EEO complaint and then was later not selected for the promotion amounts to the assertion that "I was turned down for a job because of my [protected class]," which this Court has found "is precisely the kind of conclusory allegation that is patently incompatible

- 30 -

with *Twombly* and *Iqbal*'s pleading requirements." *Easaw v. Newport*, 253 F. Supp. 3d 22, 30 (D.D.C. 2017) (internal quotations omitted). With nothing but conclusory allegations to support his claim, Plaintiff has failed to meet his burden to establish a *prima facie* case for his retaliation claim based on his non-promotion in 2022.

In sum, for the reasons set forth above, and here, the Court should dismiss Plaintiff's retaliation claims in full.

### D.     Plaintiff Fails to Raise Any Inference of Discrimination for Any of the Alleged Personnel Actions.

All of Plaintiff's discrimination claims can also be dismissed for failure to state a claim. Plaintiff alleges that the Secret Service discriminated against him based on his religion, color, and race when (1) disqualified him from two hard-to-staff job openings on August 6, 2021 (Compl. ¶¶ 41-82); (2) placed him on paid administrative leave on September 3, 2021 (*id.* ¶¶ 83-106); (3) required him to write on September 3, 2021, a memorandum for the record about a protectee's complaint (*id.* ¶¶ 108-18); and (4) and did not promote him in 2022 (*id.* ¶¶ 139, 146). Plaintiff fails to allege any inference of discrimination, even accepting his allegations to be true.

As explained above, simply asserting discrimination is not enough to survive a motion to dismiss. *See supra* § II.C.2. Here, Plaintiff does not allege that any of the decisionmakers related to his disqualification, placement on paid administrative leave, requirement that he write a memorandum, or non-promotion ever made any such discriminatory comments or remarks. *See* Compl. Nor does Plaintiff ever allege that other individuals not sharing his protected characteristics were treated more favorably than him with respect to the same events. *See id.* Rather, in his Complaint, Plaintiff entirely bases his inference of discrimination by pointing to certain alleged offensive comments and actions from Mr. Hackney and Mr. O'Connor between

2011 and 2019 and how two other employees, Mr. Berrios and Mr. Thompson, discouraged him from formally reporting the incidents. *See* Compl. ¶¶ 27-40.

Even accepting as true for purposes of this motion to dismiss, Plaintiff's allegations are insufficient to raise an inference of discrimination. All of these alleged incidents occurred between 2011 and 2019, at least two years, and up to a decade, prior to the alleged disqualification from the hard-to-staff openings, placement on paid administrative leave, requirement to write a memo, and non-promotion, which occurred between 2021 and 2022. Compl. ¶¶ 27-40. Additionally, Plaintiff does not allege that Mr. Hackney, Mr. O'Connor, Mr. Berrios, or Mr. Thompson were later involved in an even tangential manner with respect to these 2021 and 2022 events. *Id.* ¶¶ 41-146.

In this way, Plaintiff's allegations do not plausibly establish any nexus between these 2011-2019 events and Plaintiff's disqualification from the hard-to-staff openings, placement on paid administrative leave, requirement to write a memo, handling of his complaints, or non-promotion, all of which were implemented by entirely different individuals. *See Ajisefinni v. KGPG LLP*, 17 F. Supp. 3d 28, 44 (D.D.C. 2014) (requiring "clear nexus between the 'stray workplace remark[]' and the adverse action") (internal citation and quotation omitted); *Beeck v. Fed. Exp. Corp.*, 81 F. Supp. 2d 48, 53–54 (D.D.C. 2000) ("Direct evidence does not include stray remarks in the workplace, even if made by decision-makers, where the remarks are unrelated to the decisional process itself."); *Harris v. Mayorkas*, Civ. A. No. 21-1083 (GMH), 2022 WL 3452316, at *9 (D.D.C. Aug. 18, 2022) (finding mere conclusory statements that Plaintiff was treated differently from coworkers outside her protected class was insufficient to allege "plausible inference" of discrimination); *Easaw*, 253 F. Supp. 3d at 30 ("Stating simply 'I was turned down for a job

because of my [protected class]' is precisely the kind of conclusory allegation that is patently incompatible with *Twombly* and *Iqbal*'s pleading requirements.").

Therefore, the Court should dismiss all of Plaintiff's discrimination claims based on race, color, and religion as legally deficient.

**III.**   **Plaintiff's Hostile Work Environment Claim Fails as a Matter of Law.**

As a matter of law, Plaintiff cannot demonstrate a hostile work environment under Title VII. A hostile work environment exists only "[w]hen the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (quotations and citations omitted); *see Brantley v. Kempthorne*, Civ. A. No. 06-1137, 2008 WL 2073913, at *8 (D.D.C. May 13, 2008) ("[A] hostile work environment claim must be based on incidents comprising one unlawful employment practice of intimidation, insult and ridicule that pervades plaintiff's day-to-day working life." (internal quotation marks omitted)).

In determining whether a hostile work environment exists, courts must "look at the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Smith v. Jackson*, 539 F. Supp. 2d 116, 137 (D.D.C. 2008). There is both an objective and subjective component to this analysis. *Harris*, 510 U.S. at 21-22.

Courts consistently apply this demanding hostile work environment standard "to ensure that Title VII does not become a 'general civility' code," and to "filter out complaints attacking 'the ordinary tribulations of the workplace.'" *Faragher*, 524 U.S. at 788. "Even a few isolated incidents of offensive conduct do not amount to actionable harassment." *Stewart v. Evans*,

275 F.3d 1126, 1134 (D.C. Cir. 2002). Essentially, a viable hostile work environment claim requires that the challenged conduct "be extreme to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788; *see also Brooks v. Grundmann*, 748 F.3d 1273, 1277 (D.C. Cir. 2014) (plaintiff failed to establish a hostile work environment based on allegations showing that "her superiors and colleague may have been tactless and ill-mannered"). A hostile work environment claim, however, cannot be based on an "array of unrelated [alleged] discriminatory or retaliatory acts" that are not sufficiently connected to each other." *Baird*, 662 F.3d at 1252; *see also Burkes v. Holder*, 953 F. Supp. 2d 167, 177-78 (D.D.C. 2013) (limiting race-based hostile work environment claim only to related conduct).

Here, assuming Plaintiff fully exhausted his hostile work environment claim (which he has not, *see supra* § I), his claim is nonetheless based on an "array of unrelated" acts separated by significant gaps in time, spanning over a decade between 2011 to 2022. Plaintiff identifies: (1) certain comments and incidents that Plaintiff perceived as offensive between 2011 and 2019 (Compl. ¶¶ 27-40); (2) the disqualification from two hard-to-staff openings on August 6, 2021 (*id.* ¶¶ 41-82); (3) the placement on paid administrative leave on September 3, 2021 (*id.* ¶¶ 83-106); (4) the requirement that he write a memorandum for the record on September 3, 2021, about his interaction with a protectee (*id.* ¶¶ 107-18); (5) the Agency's handling of his grievance and various administrative complaints between 2021 and 2022 (*id.* ¶¶ 119-55); and (6) his non-promotion from a January 16, 2022, bid (*id.* ¶¶ 139, 146).

Each of these separate, distinct incidents span more than a decade, and are separated by several months or years, and are not cognizable hostile work environment claims. *See Mason v. Geithner*, 811 F. Supp. 2d 128, 179 (D.D.C. 2011) ("the Court can only conclude that these acts are so different in kind and remote in time that they cannot possibly comprise part of the same

hostile work environment"). Ultimately, Plaintiff's series of complaints spanning over a decade is merely a "history of events" that "indicates less a pervasive pattern of harassment, and more just isolated employment incidents occurring over a long period of time." *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 93–94 (D.D.C. 2009) (internal quotations and citations omitted; dismissing hostile work environment claim based on "disparaging remarks, criticisms of his work, and other negative comments"' and "removal of important assignments, lowered performance evaluations, and close scrutiny of assignments").

Moreover, any alleged conduct or comments from a supervisor that is ultimately unconnected to a protected characteristic or activity is an ordinary tribulation of the workplace that fails to rise to the level of a hostile work environment, and any that were connected to a protected characteristic in this case were merely isolated instances. *See, e.g.*, *Brooks*, 748 F.3d at 1277 (isolated incident of frustration, in which supervisor allegedly yelled at plaintiff and violently threw a book on a table, does not rise to the level of severity indicating hostility or abuse).

In addition, the instances that allegedly compose Plaintiff's hostile work environment claim are merely a collection of the various alleged adverse actions that also predicate his discrete discrimination and retaliation claims and are thus insufficient on this basis to constitute a hostile work environment as a matter of law. *See* Compl. ¶¶ 171, 176, 181 (incorporating by reference the same paragraphs that constitute his discrete discrimination and retaliation claims). Courts do not entertain hostile work environment claims that are merely predicated on a collection of alleged adverse actions that also predicate Plaintiff's discrete discrimination and retaliation claims. *Townsend*, 236 F. Supp. 3d at 312 ("Use of the same discrete acts, upon which the plaintiff bases his discrimination and retaliation claims, to support a hostile work environment claim is disfavored."); *Hampton v. Vilsack*, 760 F. Supp. 38, 56–57 (D.D.C. 2011) (plaintiffs "cannot .

. . rely on the discrete acts upon which" they "base[] [their] discrimination and retaliation claims to support a hostile work environment claim."); *Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003) ("[d]iscrete acts constituting . . . retaliation claims . . . are different in kind from a hostile work environment claim that must be based on severe and pervasive discriminatory intimidation or insult."); *Baird*, 662 F.3d at 1252-53 (noting that while the Court cannot "dismiss a hostile work environment claim merely because it contains discrete acts that the plaintiff claims (correctly or incorrectly) are actionable on their own," "a plaintiff may not combine discrete acts to form a hostile work environment claim without meeting the required hostile work environment standard").

Nevertheless, even if considered collectively, the alleged conduct spanning over a decade —the stray comments and incidents, the disqualification from positions, the paid administrative leave placement, the requirement that he write a memorandum for the record, the handling of his grievance and administrative complaints, and his non-promotion—is insufficient to state a hostile work environment claim as a matter of law. Ultimately, the type of conduct that Plaintiff alleges is the type of conduct that courts have found insufficient to demonstrate a hostile work environment. *See, e.g., Hicks v. Gotbaum*, 828 F. Supp. 2d 152, 166 (D.D.C. 2011) (no hostile work environment based on "failure to promote her, delay in submitting her workers' compensation claim, and the meeting with [employer] in which [plaintiff] contends she was blocked from leaving [employer's] office"); *Nurriddin*, 674 F. Supp. 2d at 94 (granting motion to dismiss hostile work environment claim premised in part on denial of promotion, opposition of transfer to another detail, close scrutiny of work, and certain reprimands and criticisms); *Heavans v. Dodaro*, Civ. A. No. 22-0836 (BAH), 2022 WL 17904237, at *11 (D.D.C. Dec. 23, 2022) (finding no hostile work environment even where alleged conduct included "allegations that

plaintiff's supervisor was rude and insensitive about his Iranian background and accent, evinced a dislike of male coworkers, was overly critical of his work performance, singled plaintiff out for closer scrutiny than she gave others, excluded him from meetings and emails, and stripped him of projects and management responsibilities."); *Brooks*, 748 F.3d at 1277 (finding no hostile work environment in selective enforcement of time and attendance policy, negative performance review, and isolated outbursts); *Martinez v. Constellis/Triple Canopy*, Civ. A. No. 20-0153 (RC), 2020 WL 5253851, at *3 (D.D.C. Sept. 3, 2020) (no hostile work environment based on allegations that employer "repeatedly questioned" his beard or uniform and had him submit to a random urinalysis test under "false pretenses"); *Bonnette v. Shinseki*, 907 F. Supp. 2d 54, 80 (D.D.C. 2012) (dismissing hostile work environment claim based on isolated insult of an office decoration, a failure to accommodate a disability, placement on a performance improvement plan, micromanagement of work, and written admonishment).

Thus, the Court should dismiss Plaintiff's hostile work environment claim under Title VII for failure to state a claim.

*        *        *

**CONCLUSION**

For these reasons, the Court should dismiss Plaintiff's Complaint in full.


Dated: July 15, 2024                          Respectfully submitted,

                                              MATTHEW M. GRAVES, D.C. Bar #481052
                                              United States Attorney

                                              BRIAN P. HUDAK
                                              Chief, Civil Division


                                              By:  _____/s/ Erika Oblea_____
                                                   ERIKA OBLEA, D.C. Bar #1034393
                                                   Assistant United States Attorney
                                                   601 D Street, NW
                                                   Washington, DC 20530
                                                   (202) 252-2567
                                                   erika.oblea@usdoj.gov

                                              *Attorneys for the United States of America*